**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

RAYMOND LEEROY KING

        Plaintiff,

v.                                 Civil Action Number:  3:22cv047-SA-RP

SAIA MOTOR FREIGHT LINE, LLC, a/k/a       **JURY DEMANDED**
SAIA LTL FREIGHT,
MARCUS MORROW, and
JOHN DOES 1-10

        Defendants.

---

## COMPLAINT

---

    The Plaintiff, Raymond Leeroy King, individually, files this complaint against the Defendants, Saia Motor Freight Line, LLC (a/k/a Saia LTL Freight), Marcus Morrow, and John Does 1-10 (collectively "Defendants") and states as follows:

### PARTIES

    1.    Raymond Leeroy King ("King" or "Plaintiff") is a resident citizen of Marshall County, Mississippi.

    2.    Defendant, Marcus Morrow ("Morrow"), is a resident citizen of Kentucky and can be served with process by serving him at 7536 Rosetta Drive, Burlington, Kentucky 41005.

    3.    Defendant, Saia Motor Freight Line, LLC (a/k/a Saia LTL Freight) is a limited liability company organized and existing under the laws of the State of Louisiana. Defendant Saia Motor Freight Line LLC is domiciled in Louisiana and has a principal place of business located at 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816. Defendant Saia Motor Freight Line LLC

is a single member limited liability company whose sole member is Saia, Inc., which is a corporation organized and existing under the laws of the State of Delaware and is domiciled and has a principal place of business in Johns Creek, Georgia. Neither Defendant Saia Motor Freight Line, LLC or its single member, Saia, Inc., are citizens of the State of Mississippi.

4.      Defendant Saia Motor Freight Line LLC is duly authorized to conduct business within the State of Mississippi and may be served with process by serving its registered agent for service of process, CT Corporations System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

5.      John Does 1-10 are other persons or entities, yet to be identified, who may be liable for the damages alleged herein for any reason, including, but not limited to, their involvement in the accident that is the subject of the case at bar.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a). Plaintiff is a resident citizen of the State of Mississippi. Defendant Saia Motor Freight Line, LLC is not a citizen of the State of Mississippi, but is rather a citizen of the State of Delaware and a citizen of the State of Georgia as the only member of the limited liability company is Saia, Inc., which is a Delaware corporation with a principal place of business located in Johns Creek, Georgia. Defendant Morrow is a resident citizen of the State of Kentucky. Therefore, the parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

7.      This Court possesses personal jurisdiction over the Defendants.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) as the accident that is the subject of this case occurred in DeSoto County, Mississippi.

## SAIA'S CORPORATE POLICIES

9.      Saia has acknowledged that there is a truck driver shortage nationwide. Saia has calculated the cost of training new drivers, which is about a week's worth of pay.  In determining whether an accident was preventable, Saia considers its own actions in determining whether an accident could have been avoided.   In 2018, Judge Matthew Kennelly of the United States District Court for the Northern District of Illinois denied Saia's motion for summary judgment on punitive damages in a dropped-trailer accident where Plaintiff alleged causes of action against Saia and its corporate practices for negligent hiring, supervision, and retention.

## SAIA'S SAFETY PROTOCOLS AND EMPLOYEE RULES

10.      Saia follows a progressive discipline policy, which is set out in its Employee Manual.  Saia classifies safety rule violations in three (3) categories:  Major, Serious, and Other. When a driver commits a safety violation, Saia determines and rules whether it is a Major, Serious, or Other safety violation and records the ruling in Infinium. A Major or Serious safety violation is denoted as "OP," otherwise preventable.

11.       Per its Employee Manual, Major safety rule violations may subject a driver to immediate termination by Saia.  Some examples are any preventable accident or incident involving significant injury, significant property damage or significant liability.   Serious safety rule violations that do not fall into the category of Major safety rule violations may subject the driver to a minimum one-day suspension and retraining by Saia.  Two serious safety rule violations in a 36-month period may subject the driver to termination.  Using a communication device while operating a commercial motor vehicle is a Serious safety rule violation per Saia's rules.  Other safety violations are violations that do not fall into the categories of Major or Serious.  Speeding is an example of Other safety rule violation.  Two other safety violations within any 12-month

period may subject the driver to suspension and retraining, and three may subject the driver to termination by Saia.

12.     Whenever one of its drivers are caught on camera using a handheld cellular device, Saia's regional safety managers receive alerts on Infinium, an electronic information data platform. Saia headquarters has access to the same information as Saia's regional safety managers.

**SAIA'S SUPERVISION OF MORROW- DECEMBER 17, 2017 TO APRIL 10, 2019**

13.     Saia hired Morrow as a line haul driver in December 2017 based in Kentucky.  At that time, Saia checked his driving record per federal law and regulations.  Kentucky, however, is not a state that allows Employer Notification Services, which is a program that automatically sends updates to the requestor when a drivers' license status changes.  After his initial hire, Saia made no further inquiry of the Kentucky State Driving Agency for the updated motor vehicle driving record of Morrow, which is annually required by the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 39.15.  Saia failed to obtain a written certification from Morrow that he had no violations for the 2018 calendar year, which is required by the Federal Motor Carrier Safety Regulations. As of April 11, 2019, which is the date of the subject accident, Saia did not know whether Morrow was in fact qualified under the federal regulations to be in one of its trucks.

14.     Between March 2018 and March 2019, Saia determined and ruled that Morrow had twenty-seven (27) separate Major or Serious safety violations, including eight violations for speeding.

15.      From September 2018 to November 2018, Morrow was caught on camera sending texts with his phone, talking on the phone while driving, and having a cell phone in his hand, which were all Serious Safety violations according to Saia's Employee Manual and Line Driver Manual. On September 10, 2018, Morrow was caught on camera using his cell phone and sending text

messages while driving a Saia tractor, which is a serious safety violation. Morrow departed his lane of travel and crossed over the fog line while driving at night. Less than two weeks later on September 22, 2018, Morrow was caught again using his cell phone while driving for Saia. On November 20, 2018, Morrow was caught again on camera with a handheld cell phone while driving for Saia.

16.    Per its own safety policies at a bare minimum, Morrow could have been fired ten (10) times over. Other than slight damage to its property, Saia never disciplined Morrow for any of his other safety violations, even though he should have been for the cell phone violations. According to Jason Looney, Saia's Louisville terminal manager starting in January 2019, Morrow should have been placed on the progressive discipline plan and recommended for termination following his last cell phone violation in light of his previous safety violations in 2018.

## APRIL 10, 2019

17.    Morrow drove a dedicated route for Saia that eventually traversed between Birmingham, Alabama and Memphis, Tennessee. Morrow continued to use his cell phone while enroute. On April 10, 2019 between 12:07 a.m. and 12:09 a.m., while on-duty and driving the same route in question, Morrow was exchanging text messages with Cheryl Darleen Mancini. At 12:09 a.m., Mancini texts Morrow: "How come you didn't call back, did your camera go off." Between 12:10 a.m. to 12:17 a.m., Morrow was on the phone talking with Mancini.

## APRIL 11, 2019

18.    In the early morning hours of April 11, 2019, King and Derek Wilson ("Wilson") were assisting Tracy Coates ("Coates") and her son, Matthew Brawley ("Brawley"), and a young woman, Valerie McClure ("McClure"), with McClure's disabled 2006 Ford Focus, which was located fully and completely within the emergency lane eastbound on Highway 78 between

Interstate 269 and the Ingram's Mill exit on Highway 78 in DeSoto County, Mississippi. At this location, Highway 78 has two lanes going eastbound with a full emergency lane on the shoulder that is marked by a solid white line.

19.     King rode with Wilson in his vehicle, and Brawley and McClure rode with Coates in her vehicle. Coates parked her vehicle behind the disabled Ford Focus while Wilson parked his vehicle in front. Both vehicles had their lights and hazard lights on so as to illuminate their vehicles and warn other drivers of McClure's disabled Ford Focus whose battery had died from having its flashers on earlier in the evening.

20.     At around the same time on April 11, 2019, Morrow was operating a tractor-trailer owned by Saia and was headed eastbound on Highway 78 traveling from Birmingham and headed to Memphis.

21.     Morrow continued to use his cell phone while approaching the scene of the accident. At 12:27 a.m., Morrow sent an IMessages to Dezi Wingeier in Kentucky. And again at 1:12 a.m., which was just minutes before the accident occurred, he sent another IMessage to her.

22.     Sending messages and using a cell phone while driving a tractor-trailer is a recognized danger in the trucking industry and an extreme threat to motorist and pedestrian safety.

23.     Wilson and King were unable to repair McClure's disabled vehicle and decided to depart and return later in the day. Brawley and McClure had just finished removing personal belongings from McClure's vehicle. Brawley was standing next to the driver's side door and within the emergency lane's white line separating the emergency lane from the adjacent lane of traffic on Highway 78. McClure was standing on the driver's side near the rear of her vehicle. Coates was standing on the passenger side also near the rear. Wilson was standing at the front of the vehicle along with King who was standing closest to the road.

## THE ACCIDENT

24.     Based upon in-board and out-board cameras on Saia's tractor, which captured his actions, as Morrow passed by the interchange with I-269, vehicles in the emergency lane with hazards flashing and headlights on become visible.  Morrow is looking to his left, where he keeps his cell phone in the dash, and moving his mouth.  He never slowed down.  He never moved over into an open lane as he drifts over the white fog line.

25.      A portion of the tractor-trailer crossed the fog line between 12 inches and 24 inches and struck the Ford Focus, which was between 2.7 feet and 2.75 feet inside the fog line. The tractor-trailer impacted the Ford Focus behind the driver's side rear wheel. The right steer tire of the tractor crossed the fog line and traveled approximately 6 inches from the Ford Focus where the rear of the steer tire impacted it

26.     At 68 m.p.h. in a 60,000-pound tractor trailer, Morrow's tractor-trailer struck Brawley who was standing inside the emergency lane next to the disabled vehicle.  Brawley's body, which was mangled and torn apart, was catapulted forward and to the right landing under the rear tires of Wilson's vehicle parked in front of the Ford Focus.

27.     When Morrow's tractor-trailer struck the Ford Focus scraping it from rear to front on the driver's side, King was just a few feet away from the horrific collision.  At impact, there was a loud noise as 60,000 pounds of tractor-trailer traveling at 68 m.p.h. grinded metal against screeching metal.  As King was standing near the front of the vehicle, he was sprayed with blood and body parts from Brawley.

28.     A mad scramble to locate Brawley then ensued.  King and Wilson discovered his body underneath Wilson's vehicle.  King tried to pick up the rear end and injured his groin in the

process.  Wilson jumped in his car to move it off of Brawley.  Shortly thereafter, King could hear Wilson and Coates screaming as Coates held Brawley who later died in her arms.

29.     Law enforcement arrived on the scene. When the state trooper asked him for King's license, and he pulled out his wallet, there was piece of intestine in his pocket.  King's shirt was covered in blood.  He has suffered from nightmares ever since.

### AFTER THE ACCIDENT

30.     When questioned by State Trooper Ronnie Davis, Morrow did not inform him that there was a video of the accident, both in-board and out-board, and capable of immediate review. Saia' representatives were on scene shortly after the accident while the investigation was ongoing, and Saia's representatives likewise did not inform law enforcement of the presence of the videos.

31.     After the accident, Saia failed to test Morrow for drugs and alcohol within two (2) hours of the accident, which is federally regulated and required.  Saia did not explain in writing why it failed to test Morrow for drugs and alcohol within the time as required by federal regulations.

32.     Saia was notified to preserve all evidence related to the accident including cell phones on April 12, 2019.  Saia failed to preserve all of the data stored on Morrow's phone after the accident, which would have included information related to whether his phone was in use (e.g., apps, internet, etc.) at the time of the accident.  Saia failed to preserve critical lane departure video aimed at the fog line that would have clearly recorded the right steer tire crossing the fog line.

33.     Saia's failures to preserve crucial evidence after the accident were no accident.  It has no evidence preservation policy company-wide regardless of whether a fatality was involved or not.

8

**INJURIES AND EMPLOYMENT**

34.     King was only a few feet away when Morrow side-swiped the Ford Focus and was almost killed himself.  He was physically impacted by blood and gore from Brawley's body finding pieces thereof in his pocket.  In a desperate attempt to locate Brawley, King attempted to lift the back end of Wilson's vehicle off of Brawley's body thereby injuring his groin and aggravating a hernia.  King has developed severe and disabling post-traumatic stress disorder ("PTSD") and has undergone two (2) operations to repair a painful and debilitating hernia ("Groin Injury").

35.      Before the accident, King was gainfully employed in the construction industry. But since then, he has been unable to work because of his PTSD and Groin Injury.

**COUNT ONE:  NEGLIGENCE OF DEFENDANT MARCUS MORROW**

36.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Plaintiff incorporates by reference paragraphs 1-35 herein.

37.     Defendant Morrow owed Plaintiff a duty to operate the tractor-trailer with reasonable care, including keeping a reasonably careful lookout for illuminated, disabled vehicles and nearby pedestrians, slowing the speed of the tractor-trailer accordingly, and changing lanes to avoid such disabled vehicles and pedestrians, which is commensurate with the dangerous character of the tractor trailer and the nature of Highway 78 in DeSoto County, Mississippi under the circumstances then and there existing.

38.     Defendant Morrow breached this duty of care owed to Plaintiff when his tractor-trailer entered into the emergency lane striking both the disabled vehicle, almost killing Plaintiff, hurling the body of the deceased, Matthew Brawley, towards Plaintiff in such a manner as to physically impact him with blood and gore, necessitating emergency rescue efforts by Plaintiff thereby injuring his groin and body, and committing the following acts of common law negligence:

a.   Failing to operate the tractor-trailer with the degree of care and caution required of a reasonably prudent person under similar circumstances;

b.   Failing to maintain proper control of the tractor-trailer under the existing circumstances;

c.   Failing to maintain a proper lookout;

d.   Failing to keep the tractor-trailer within his lane of traffic and entering the emergency lane when there were pedestrians, including the deceased, a disabled vehicle, and two other vehicles with flashing lights present within the emergency lane;

e.   Failing to either change lanes or slow down or both when Defendant Morrow had a clear and unimpeded view of the pedestrians, including the deceased, the disabled vehicle, and the two other vehicles within the emergency lane and had sufficient time to do so;

f.   Failing to exercise a reasonable degree of care to operate the tractor-trailer in a manner to avoid the accident;

g.   Failing to obey traffic laws; and

h.   Failing to devote full time and attention to the operation of the tractor-trailer.

39.   As a direct and proximate cause of the negligence of Defendant Morrow, Plaintiff has suffered from mental injuries including, but not limited to PTSD and physical injuries including, but not limited to the Groin Injury. Plaintiff has suffered economic damages including, but not limited to medical expenses -- past, present, and future, as well as financial damages including, but not limited to lost income -- past, present, and future. Plaintiff continues to suffer

both physically and mentally including, but not limited to loss of enjoyment of life -- past, present, and future.

40.     Defendant Morrow's actions and inactions were the cause in fact of Plaintiff's damages.

41.     Plaintiff's damages were a foreseeable result of the negligent actions and inactions of Defendant Morrow.

**COUNT TWO:  NEGLIGENCE PER SE OF DEFENDANT MARCUS MORROW**

42.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Plaintiff incorporates by reference paragraphs 1-35 herein.

43.     Defendant Morrow is guilty of violating the following statutes of the State of Mississippi which were in full force and effect at the time and place of the accident:

      i.     M.C.A. § 63-3-1201. Willful or wanton disregard; and

      j.     M.C.A. § 63-3-1213. Carless or imprudent driving.

44.     Defendant Morrow violated applicable Federal law and regulations, including but not limited to the Federal Motor Carrier Safety regulations.

45.     Defendant Morrow failed to adhere to these duties violating Mississippi law and Federal law and regulations, constituting negligence per se.

46.     On April 11, 2019, Plaintiff was a member of the class that Mississippi law and Federal law and regulations were meant to protect.

47.     As a direct and proximate cause of the negligence per se of Defendant Morrow, Plaintiff has suffered damages as more particularly described herein.

48.     Defendant Morrow's actions and inactions were the cause in fact of Plaintiff's damages.

49.     Plaintiff's damages were a foreseeable result of the negligent actions and inactions of Defendant Morrow.

**COUNT THREE:  GROSS NEGLIGENCE OF DEFENDANT MARCUS MORROW**

50.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Plaintiff incorporates by reference paragraphs 1-35 herein.

51.     Defendant Morrow has a dedicated and clear history of dangerous and distracted driving and continuing in that practice despite rules and regulations to the contrary.

52.     Between March 2018 and March 2019, Morrow committed twenty-seven (27) Major or Serious Safety violations as ruled by Saia pursuant to its own policies, including three (3) cell phone violations, multiple excessive speeding violations, and improper lane departures.

53.     On September 10, 2018, Defendant Morrow was caught on camera using his cell phone and sending text messages while driving a Saia tractor, which is a Serious safety violation per Saia's rules.  Morrow departed his lane of travel and crossed over the fog line while driving at night.

54.     Less than two weeks later on September 22, 2018, Morrow was caught again using his cell phone while driving for Saia.

55.     On November 20, 2018, Morrow was caught again on camera with a handheld cell phone.

56.     On April 10, 2019, while on-duty and driving, Morrow was on the phone talking with Cheryl Darleen Mancini from 12:10 a.m. to 12:17 a.m. Between 12:07 a.m. and 12:09 a.m., Morrow was exchanging text messages with Mancini.   At 12:09 a.m., Mancini texts Morrow: "How come you didn't call back, did your camera go off."

57.     Morrow admitted that he used his cell phone three times (3) while driving within the 24-hour period preceding the accident in violation of Saia's safety rules.

58.     On the night of the accident, while on-duty and driving, Morrow sent two (2) IMessages to Dezi Wingeier in Kentucky at 12:27 a.m. and 1:12 a.m.

59.     On the April 11, 2019 drive-cam video just seconds before the accident, Morrow is looking to his left with his mouth moving.  Morrow testified that he keeps his cell phone on the dashboard to the left of the steering wheel.

60.     Driving a tractor-trailer while using a cellphone is extremely dangerous, which every professional truck driver knows or should know including Defendant Morrow.  Despite this extremely dangerous risk, Defendant Morrow was utilizing his cell phone before and up to the time of the accident.

61.     A professional truck driver knows or should know, including Defendant Morrow, that whenever vehicles are parked in the emergency lane there is a risk pedestrians might be present. And yet despite this risk, (if indeed Defendant Morrow actually saw vehicles present in the emergency lane), he deliberately stayed in his lane even though he could have easily moved over.  Defendant Morrow recognized the risk, appreciated the risk, and consciously disregarded the risk.

62.     Defendant Morrow owed Plaintiff a duty of due care to operate the tractor-trailer with reasonable and prudent care, including refraining from using a cell phone while driving, keeping a reasonably careful lookout for illuminated, disabled vehicles and nearby pedestrians, slowing the speed of the tractor-trailer accordingly, and changing lanes to avoid such disabled vehicles and pedestrians, which is commensurate with the dangerous character of the tractor trailer

13

and the nature of Highway 78 in DeSoto County, Mississippi under the circumstances then and there existing.

63.     Defendant Morrow's actions and inactions recklessly and wantonly breached that duty of care to Plaintiff as described herein by using his cell phone and consciously ignoring the vehicles in the emergency lane and not moving over into an open lane when his tractor-trailer entered into the emergency lane striking both the disabled vehicle, almost killing Plaintiff, hurling the body of the deceased, Matthew Brawley, towards Plaintiff in such a manner as to physically impact him with blood and gore and necessitating emergency rescue efforts by Plaintiff that injured his groin and body.

64.     Defendant Morrow's actions and inactions are ones that evoke outrage and revulsion in civilized society, which were recklessly directed at Plaintiff and by which he has suffered and will continue to suffer.

65.     Plaintiff's injuries and damages were a foreseeable result of the reckless actions of Defendant Morrow.

66.     As a direct and proximate result of Defendant Morrow's recklessness, Plaintiff has suffered and will continue to suffer damages and all other damages to which he is entitled under Mississippi law.

## COUNT FOUR:  NEGLIGENCE OF DEFENDANT SAIA

67.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Plaintiff incorporates by reference paragraphs 1-35 herein.

68.     Defendant Saia owed Plaintiff a duty of care to only employ drivers who can competently and safely operate its tractor-trailers on Mississippi highways and roads.  That duty of care includes, but is not limited to, properly supervising its drivers and terminating them, if

Defendant Saia knows or should know that continued employment of an unsafe driver poses an unreasonable risk of injury or death to fellow motorists and pedestrians like Plaintiff.

69.     Defendant Morrow was just such a driver and posed a clear and present danger to Mississippi motorists and pedestrians including Plaintiff through continued employment by Defendant Saia.

70.     Between March 2018 and March 2019, Defendant Morrow committed twenty-seven (27) Major or Serious Safety violations as ruled by Defendant Saia pursuant to its own policies, including three (3) cell phone violations, multiple excessive speeding violations, and improper lane departures. Per its own policies, Defendant Saia could have fired Morrow ten (10) times over at a minimum.

71.     Defendant Saia knew or should have known based upon his atrocious safety record per its own explicit rules and telemetric systems that Defendant Morrow was an unsafe and dangerous driver and that he was an unreasonable risk and threat to motorist and pedestrian safety including Plaintiff on April 11, 2019.

72.     Defendant Morrow should have never been driving one of Defendant Saia's tractor-trailers in the early morning hours of April 11, 2019.  Defendant Saia failed to properly supervise and terminate Morrow when it should have.  But for its failures, Defendant Morrow killed Brawley and almost killed Plaintiff causing blood and gore to physically impact Plaintiff and causing the frantic rescue efforts that further inflicted the Groin Injury upon him.

73.     Defendant Saia's failure to supervise and terminate Defendant Morrow breached its duty of care to Plaintiff constituting negligence that directly and proximately caused and inflicted injuries and damages upon Plaintiff, all of which was reasonably foreseeable to Defendant Saia.

## COUNT FIVE: GROSS NEGLIGENCE OF DEFENDANT SAIA

74. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Plaintiff incorporates by reference paragraphs 1-35 herein.

75. Defendant Saia knows and understands that there is a nationwide truck driver shortage and has been for years. Defendant Saia further knows and understands that it is cheaper and better for its financial bottom line and investors to retain unsafe and incompetent drivers than to fire them when they should because it costs more to hire and train a new employee. Defendant Saia has actually calculated this cost-benefit ratio.

76. Defendant Saia has spent millions of dollars to implement telemetric systems, i.e., remote electronic surveillance and metrics, in its tractors to record real-time data on speed, abrupt braking, lane departures, and in-board cameras ostensibly to improve driver performance and motor vehicle safety for its fleet and the driving public.

77. Defendant Saia has implemented uniform and company-wide practices to monitor fleet and driver safety performance through regional safety divisions all reporting to corporate headquarters including its risk assessment department. These regional safety divisions and managers as well as the risk assessment department and Defendant Saia's corporate leadership all have immediate, real-time access to driver safety data through its telemetric systems.

78. Defendant Saia has implemented a risk assessment department whose purpose (among others) is to judge and rule upon safety violations of its drivers in order to make decisions on driver suspension and termination per its disciplinary rules and protocols.

79. Defendant Saia's telemetric system by and through its vendor, Lytx, Inc., provide it and its corporate leadership real time data and video of driver error and safety violations along with recommendations for "coaching" opportunities, i.e., opportunities for further training.

80.     Defendant Saia admits that distracted driving is dangerous and kills thousands of motorists each year.

81.     Defendant Saia knew that Defendant Morrow had committed twenty-seven (27) Major or Serious safety violations between March 2018 and March 2019 as its risk assessment department had made those determinations.  Per its own policies, Saia could have fired Morrow ten (10) times over at a minimum.  Yet Saia never once disciplined him.  Saia never even gave him a verbal or written warning.

82.     Defendant Saia was repeatedly warned by its vendor, Lytx, that Defendant Morrow was committing multiple safety errors and recommended that Saia "coach" him on dangerous driving.  Yet, Defendant Saia never followed up with Morrow.  Saia never even required Morrow to sign the coaching reports.  According to Jason Looney, Saia's Louisville terminal manager starting in January 2019, Morrow should have been placed on the progressive discipline plan and recommended for termination following his last cell phone violation in light of his previous safety violations in 2018.

83.     In light of overwhelming evidence that Morrow should have been fired before April 11, 2019 per its own rules and telemetric data, Defendant Saia's decision to retain him as an employee was a deliberate and conscious disregard for the safety of the motoring public including Plaintiff.

84.     Defendant Saia owed Plaintiff a duty of due care to act as a reasonably prudent trucking company and to supervise Morrow properly and terminate him when it was obvious Morrow had no intention on abiding by its safety rules, which he violated with abandon, and presented an immediate and substantial risk to motorist and pedestrian safety including Plaintiff.

85.    Defendant Saia's actions and inactions recklessly and wantonly breached that duty of care to Plaintiff as described herein when it turned a blind eye towards his safety violations and kept him employed as a driver.

86.    Defendant Saia's actions and inactions are ones that evoke outrage as it knew it was cheaper to keep Morrow regardless of the risk than it was to fire him and hire and train a new employee.

87.    Plaintiff's injuries and damages were a foreseeable result of the reckless actions of Defendant Saia

88.    As a direct and proximate result of Defendant Morrow's recklessness, Plaintiff has suffered and will continue to suffer damages and all other damages to which he is entitled under Mississippi law.

## COUNT SIX:  PUNITIVE DAMAGES - DEFENDANT SAIA

89.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Plaintiff incorporates by reference paragraphs 1-35 and 74-88 herein.

90.    Defendant Saia's conscious and reckless disregard for the safety of Plaintiff on April 11, 2019 renders it liable for punitive damages under Mississippi Law.

91.    But for Defendant Saia's conscious and reckless disregard for the safety of the motoring public including Plaintiff is not confined to April 11, 2019.  Defendant Saia knows and admits that distracted driving like using a cell phone while operating a 60,000-pound tractor-trailer is dangerous and causes thousands of fatalities each year.  Defendant Saia has spent millions of dollars on data and information systems specifically designed to notify and alert it of dangerous drivers.  Yet, Defendant Saia does not track or monitor distracted driving at any level despite that

information being readily available to both the risk assessment department and corporate leadership.

92.     And when fatal accidents occur with one of its drivers like Morrow, Defendant Saia fails to preserve crucial evidence like it did here.  That is no coincidence either as it has no company policy to preserve evidence.  This is a deliberate company-wide choice.  Defendant Saia has determined that having less or no evidence in fatalities is better than having some or more evidence.  Indeed, Defendant Saia failed to preserve the very video footage from the camera designed to track the fog line and the right steer tire.  It also failed to preserve evidence from Morrow's phone that would have indicated whether it was in use at the time of the accident.

93.     Defendant Saia spends millions on telemetric data only to ignore that data when confronted with dangerous and distracted truck drivers.

94.     Defendant Saia knows that it is cheaper to retain dangerous drivers than to fire them and hire and train new ones.

95.     Defendant Saia's company-wide policies as described herein represent a conscious disregard for the safety of the motoring public including Plaintiff and a reckless and deliberate indifference to the dangers of distracted driving.

96.      In determining whether an accident was preventable, Defendant Saia considers its own actions in determining whether an accident could have been avoided.

97.     As such, Defendant Saia is liable for punitive damages for the accident of April 11, 2019, which is part and parcel of its corporate practices.

**COUNT SEVEN:  PUNITIVE DAMAGES - DEFENDANT MORROW**

98.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Plaintiff incorporates by reference paragraphs 1-35 and 50-66 herein.

99.     Defendant Morrow's actions and inactions as described herein constitute a reckless and wanton disregard for the safety of Plaintiff, and as such, Defendant Morrow is liable for punitive damages.

## COUNT EIGHT:  VICAROUS LIABILITY

100.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Plaintiff incorporates by reference paragraphs 1-66 and 98-99 herein.

101.     Defendant Saia employed Defendant Morrow to operate its tractor-trailer for shipping purposes within the United States including April 11, 2019.

102.     Defendant Morrow operated the tractor-trailer, which was apparent to the reasonable observer including Plaintiff, that Saia owned and operated based on the appearance and other aspects of the tractor-trailer.

103.     While Defendant Morrow operated the tractor-trailer that was owned and operated by Saia, and while performing services on behalf of Saia, Defendant Morrow failed to exercise reasonable care required of an operator of a tractor-trailer under Mississippi law and applicable Federal law and regulations thus causing the Plaintiff damages as set out and alleged herein.

104.     As Defendant Morrow is Defendant Saia's employee/agent/apparent agent, Defendant Saia is liable for the damages inflicted upon Plaintiff while Defendant Morrow was performing shipping services on behalf of Defendant Saia.

## JURY DEMAND

105.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

Wherefore, premises considered, Plaintiff, Raymond Leeroy King, prays that proper process be issued for Defendants and be served upon Defendants directing them to appear and answer the Complaint; prays that the Court find the Defendants, Saia Motor Freight Line, LLC, a/k/a Saia LTL Freight, Marcus Morrow and John Does 1-10, liable for all damages as set forth herein, including compensatory damages, which exceed Seventy-Five Thousand Dollars ($75,000.00), in an amount to be determined at trial, punitive damages, pre-judgment and post-judgment interest, costs, and attorneys' fees and expenses, and any such further relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

**FARRIS BOBANGO & BRANAN, PLC**

999 S. Shady Grove Rd., Suite 500
Memphis, Tennessee 38120
(901) 259-7100

By: s/ *Paul C. Peel*
Paul C. Peel (MS Bar No. 102586)
*Counsel for Plaintiff*